Case 7:97-cr-00024-MFU  Document 751  Filed 09/11/19  Page 1 of 15  Pageid#: 1667

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 11 2019

JULIA C. DUDLEY, CLERK
BY: /s/ A. Seagle
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 7:97-cr-0024 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| AMAR KHALID ABED, | ) Chief United States District Judge |
| RAYED FAWZI ABED, | ) |
| OBADYA HANAFIE ABED, and | ) |
| FAHAD T. TAWALBEH, | ) |
|     Defendants | ) |

## MEMORANDUM OPINION

Defendants Amar Khalid Abed, Rayed Fawzi Abed, Obadya Hanafie Abed, and Fahad T. Tawalbeh (hereinafter "the defendants"), initially proceeding pro se but later represented by counsel, filed motions in 2016 to vacate their convictions and sentences pursuant to 28 U.S.C. § 2255. ECF Nos. 654, 658, 668, 675, 676. Supplemental and amended motions also were filed. ECF Nos. 686, 687, 688, 689, 691, 692, 693, 694. The defendants argue that they are entitled to relief pursuant to the holding in Johnson v. United States, 135 S.Ct. 2551 (2015). On January 10, 2017, the government filed motions to dismiss the petitions. ECF Nos. 705, 706. Also pending are a motion for reconsideration of an order denying a motion for release from custody, ECF No. 738, and two additional motions for release from custody. ECF Nos. 739, 740.

On April 12, 2017, the court entered an order staying the cases pending resolution of United States v. Simms, 914 F.3d 229 (4th Cir. 2019). Simms has now been decided and the

1

Supreme Court decided a similar issue in United States v. Davis, 139 S.Ct. 2319 (2019). The parties have fully briefed the issues.

As discussed more fully below, the motions for relief under 28 U.S.C. § 2255, ECF Nos. 654, 658, 668, 675, 676, 686, 687, 688, 689, 691, 692, 693, 694, are **GRANTED** as regards Count 11 of the indictment, charging a violation of 18 U.S.C. § 924(c), use of a destructive device to commit a felony in violation of 18 U.S.C. § 924(c). The defendants' motions for immediate release, ECF Nos. 738, 739, 740, are **DENIED**. The government's motions to dismiss, ECF Nos. 705, 706 are **DENIED**.[1] The Count 11 convictions and mandatory 30-year sentences the defendants are serving for Count 11 are **VACATED**.

However, because these defendants were sentenced based on multiple convictions, their requests for immediate release are **DENIED**. Instead, as explained below, the court will conduct resentencing hearings for each of the defendants after revised Presentence Reports have been prepared and filed and the parties have had an opportunity to review and object to them. The court will hold separate resentencing hearings for the defendants in November and December 2019.

## BACKGROUND

The convictions in this case stem from an investigation of the defendants, who were members of what was loosely termed the Abed organization, which included at least ten individuals. ECF No. 645 at 4-5. In 1995 Fahed Tawalbeh and Amar Abed were convicted of food stamp fraud related to a convenience store they owned. Id. at 5. In March 1996, agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) began investigating a

---

[1] The government effectively withdrew these motions when it filed its response to the supplemental motions to vacate. ECF No. 744.

series of suspicious fires and attempted arsons at properties owned by Fahad Tawalbeh and other members of the Abed organization. Id. at 5-6. As the investigation progressed, law enforcement officers learned of crimes committed by the Abed organization, including drug dealing, robbery, burglary, theft, assault, and arson. Id. at 6-7.

Relevant to this proceeding, in late 1994 defendant Fahed Tawalbeh, who owned a convenience store called the Speedway Market, became upset because he believed his business was suffering from competition with The Corner Store, a convenience store located across the street from the Speedway Market. He hatched a plan to burn down The Corner Store and agreed to pay Amar Abed, Rayed Abed, Obadya Abed, and another man, Richard Chisom, $2,000 to burn down the store by tossing a Molotov cocktail through the back window of the store. Id. at 10-11.

On January 13, 1995, Rayed Abed drove the four of them to the Corner Store. Obadya Abed acted as the lookout and Amar Abed and Chisom went to the back of the store. At approximately 5:45 a.m., Amar Abed broke a back window with a rock and Chisom was preparing to light the rag stuffed into the top of the bottle when he looked to his left and saw someone walking. Chisom told Amar that he was afraid and did not think he could do it and Amar told him he had no choice but to do it. Amar lit the fuse and Chisom tossed the Molotov cocktail through the window. Id. at 11.

A crowd gathered as the fire burned and firefighters arrived to fight it. Fahed Tawalbeh and Joseph Abed, another member of the Abed organization, watched the fire from the parking lot of the Speedway Market. Two people, Todd Thomas and Barbara Hardy, were seen talking to firefighters and pointing in the direction of Joseph Abed and

Fahed Tawalbeh. Thomas and Hardy lived in the apartment where Chisom believed someone had seen him and Amar Abed behind The Corner Store. On the evening of January 13, 1995, Thomas and Hardy died in a fire that occurred at their apartment. Id.

On March 4, 1997 the Abed defendants were indicted on a number of counts based on the plot to burn down the convenience store. All were arrested shortly thereafter.

On March 6, 1998, following a 35-day jury trial, Amar Khalid Abed was convicted of racketeering in violation of 18 U.S.C. § 1962(c) (Count 1); conspiracy to racketeer in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to commit arson in violation of 18 U.S.C. § 371 (Count 3); arson in violation of 18 U.S.C. § 844(i) (Count 4); conspiracy to commit arson in violation of 18 U.S.C. § 371 (Count 9); arson in violation of 18 U.S.C. § 844(i) (Count 10); use of a destructive device to commit a felony in violation of 18 U.S.C. § 924(c) (Count 11); and conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count 12). ECF No. 645 at 1. On August 27, 1998 he was sentenced to 210 months on Counts 1, 2, 4, 10, and 12; and 60 months on Counts 3 and 9, all to run concurrently. He was sentenced to 360 months on Count 11, to run consecutively to the other terms, for a total of 570 months. In addition, he was sentenced to a total supervised release term of 5 years. Min. Entry of August 27, 1998 and ECF No. 438.

Rayed Fawzi Abed was convicted on Counts 1, 2, 9, 10, 11, and 12 and also of bribery of a witness in violation of 18 U.S.C. § 201(b)(3). ECF No. 649. He was sentenced to 78 months on Counts 1, 2, 9, 10, 12, and the bribery of a witness count, and 60 months on Count 9, all to run concurrently. He was sentenced to 360 months on Count 11, to run

4

consecutively to the other terms, for a total of 438 months. In addition, he was sentenced to a total supervised release term of 5 years. Min. Entry of August 27, 1998 and ECF No. 443.

Obadya Hanafie Abed was convicted on Counts 1, 2, 9, 10, 11, and 12. He was sentenced to 137 months on counts 1, 2, 10, and 12, and 60 months on Count 9, all to run concurrently. He was sentenced to 360 months on Count 11 to run consecutively to the other counts for a total of 497 months and was sentenced to a total of 5 years of supervised release. Min. Entry of August 27, 1998 and ECF No. 442.

Fahad Tawalbeh was convicted on Counts 9, 10, and 11. He was sentenced to 60 months on Count 9 and 70 months on Count 10, plus one month pursuant to 18 U.S.C. §3147 to be served consecutively to Counts 9 and 10. He was sentenced to 360 months on Count 11 to run consecutively to Counts 9 and 10, for a total of 431 months. He also was sentenced to a total of 5 years of supervised release. Min. Entry of August 27, 1998 and ECF No. 439.

Following their convictions, the Abed defendants filed direct appeals with the Fourth Circuit Court of Appeals, which affirmed their convictions and sentences. United States v. Abed, 203 F.3d 822 (4th Cir. 2000) (Table). With regard to the pending § 2255 motions, all the Abed defendants were granted authorization by the Fourth Circuit Court of Appeals to file successive applications for post-conviction relief based on Johnson v. United States, 135 S.Ct. 2551 (2015). ECF Nos. 653, 657, 667, 674.

## DISCUSSION

**I. 28 U.S.C. § 2255**

A petitioner may obtain relief via 28 U.S.C. § 2255 by showing (1) that his sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence was in excess of that authorized by law; or (4) that the sentence is otherwise subject to collateral attack. The defendants argue that following the decisions in Johnson and its progeny, the part of their sentence based on 18 U.S.C. § 924(c)(3) was imposed in violation of the Constitution.

When the defendants were sentenced on Count 11, the offense of carrying a destructive device in relation to a crime of violence carried a 30-year mandatory sentence, to be imposed consecutively to any other sentence. 18 U.S.C. § 924(c)(1) (1994). "Crime of violence" was defined as an offense that is a felony and—

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subpart (A) is known as the force clause, or the elements clause, and Subpart (B) is known as the residual clause. The defendants assert that based on Johnson and the cases that came after it, the residual clause is unconstitutionally vague and further argue that the crime charged in Count 11 falls outside the force clause. As such, they contend that the 30-year mandatory, consecutive sentence for Count 11 was imposed on them in violation of the Constitution.

## II. Johnson, Dimaya, Simms, and Davis

In Johnson, the Supreme Court examined 18 U.S.C. § 924(e)(2)(B)(ii), which defined "violent felony" for purposes of increasing sentences under the Armed Career Criminal Act

6

(ACCA) in part as "burglary, arson, or extortion, involves the use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*" The italicized portion of the statute, known as the residual clause, was found to be unconstitutionally vague because it left grave uncertainty about how to estimate the risk posed by a crime and also left uncertainty about how much risk it takes for a crime to qualify as a violent felony. Johnson, 135 S.Ct. at 2558. The Court concluded that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. Id. at 2563. The holding in Johnson announced a new rule of constitutional law made retroactively applicable to cases on collateral review. Welch v. United States, 136 S.Ct. 1257, 1264 (2016).

In Sessions v. Dimaya, 138 S.Ct. 1204 (2018), the Supreme Court found similar language in 18 U.S.C. § 16(b) unconstitutionally vague. Section 16 defined "crime of violence" in the federal criminal code as follows:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Court applied the Johnson void-for-vagueness analysis to §16(b) and found the statute unconstitutionally vague because it required a court to assess the risk posed by the ordinary case of a particular offense without providing a means of "divining the conduct entailed in a crime's ordinary case." Id. at 1215. The statute also created uncertainty about the level of risk that makes a crime violent. Id.

> In sum, § 16(b) has the same "[t]wo features" that "conspire[d] to make [ACCA's residual clause] unconstitutionally vague." It too "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and

7

> to judge whether that abstraction presents" some not-well-specified-yet-sufficiently-large degree of risk. The result is that § 16(b) produces, just as ACCA's residual clause did, "more unpredictability and arbitrariness than the Due Process clause tolerates."

Id. at 1216 (internal quotations are from Johnson, 135 S.Ct. at 2556-2558.).

In Simms, the Fourth Circuit Court of Appeals looked at Johnson and Dimaya to address the issue raised by the defendants in this case: whether § 924(c)(3)(B), which defines "crime of violence" and mandates a 30-year consecutive sentence in their cases, is unconstitutionally vague. The court found that the text and structure of § 924(c)(3)(B) plainly set forth a definition of "crime of violence" that fails to comport with due process. Simms, 914 F.3d at 232.

Under § 924(c)(3)(B), the residual clause, the court noted that the only way Simms could be convicted was if it was determined that he committed a felony offense, "'that, by its nature[ ] involves a substantial risk that physical force may be used in the course of committing the offense.'" Id. at 234 (citing § 924(c)(3)(B)). The court applied the "ordinary-case" categorical approach, where courts must use the statutory definition of an offense to imagine its "ordinary case," and then consider whether the imagined ordinary case entails a "substantial risk" of force. Id. at 234 (citing Dimaya, 138 S.Ct. at 1211)).

Relying on Johnson and Dimaya, the Fourth Circuit found that § 924(c)(3)(B) required a court to imagine the idealized ordinary case of a crime without providing any guidance on how to do so, rendering any judicial account of the ordinary case wholly speculative. Id. at 236 (citing Dimaya, 138 S.Ct. at 1213-14, and Johnson, 135 S.Ct. at 2557-58). "After conceiving of this judicial abstraction, a court must then assess its speculation using the same vague standard of 'substantial risk' required by § 16(b) in Dimaya." Simms,

8

914 F.3d at 236. Because the "conjectural exercise suffers from the same two fundamental flaws that, in combination, rendered the statutory provisions in Johnson and Dimaya void for vagueness[,]" the court concluded that § 924(c)(3)(B) is unconstitutional. Id. at 237.

In Davis, petitioners also challenged their convictions under § 924(c)(3)(B). The Supreme Court extended the holdings in Johnson and Dimaya to reach the same conclusion as the court in Simms: that § 924(c)(3)(B) is unconstitutionally vague. The Court found that applying the categorical approach to § 924(c)(3)(B) is consistent with the statute's text, context, and history and rejected to government's argument to apply a case-specific analysis to the statute. Davis, 139 S.Ct at 2336.

It is now uncontested that § 924(c)(3)(B) is unconstitutionally vague under Simms and Davis. The government initially argued that the Abed defendants were not entitled to relief under § 2255 because their claims were second or successive, time-barred, and procedurally defaulted but has since withdrawn those arguments. ECF No. 744 at 1. The government also concedes that defendants' underlying arson convictions do not satisfy the force clause of 18 U.S.C. § 924(c)(3)(A). See United States v. Salas, 889 F.3d 681, 684 (10th Cir. 2018) (finding that § 844(i) does not qualify as a predicate offense under the force clause of § 924(c)(3)(A) because it does not require, as an element, the use of force against the property of another).

Based on the foregoing, the defendants' convictions under Count 11, for use of a destructive device to commit a felony in violation of 18 U.S.C. § 924(c), must be **VACATED**. In fact, the government concedes as much. The defendants further argue that they have served all the other sentences on which they were convicted and that they are

9

entitled to immediate release. However, as discussed below, the court finds that the defendants are subject to resentencing under the sentence-packaging doctrine and therefore **DENIES** their request for immediate release.

### III. Sentence-Packaging Doctrine

Under 28 U.S.C. § 2255(b), when a court determines that a petitioner is entitled to relief, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." The language "confers a broad and flexible power to the district court to fashion the appropriate remedy for an unlawful conviction." United States v. Chaney, 911 F.3d 222, 225 (4th Cir. 2018) (internal quotations omitted). The "sentence-packaging doctrine" provides that in appropriate circumstances, resentencing on all counts is a proper remedy under § 2255 for a single unlawful conviction. Id. at 226. In the context of a resentencing following appellate reversal of one part of a sentence, the Supreme Court has held the following:

> "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." United States v. Stinson, 97 F.3d 366, 469 (C.A. 11 1996) (per curiam). Because a district court's "original sentencing intent may be undermined by altering one portion of the calculus," United States v. White, 406 F.3d 827, 832 (C.A. 7 2005), an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence … so that, on remand, the trial court can reconfigure the sentencing plan … to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," Greenlaw v. United States, 554 U.S. 237, 253, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008).

Pepper v. United States, 562 U.S. 476, 507 (2011).

The defendants argue that if they are subject to resentencing such that the sentences on their remaining counts are increased, that it will violate their constitutional rights under

10

both the ex post facto and due process clauses of the Constitution. However, a review of their arguments and case law indicates that no such concerns come into play.

### A. Ex Post Facto Clause

"The Constitution forbids the passage of ex post facto laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" Peugh v. United States, 569 U.S. 530, 532-533 (2013). In Peugh, the Court held that even though the United States Sentencing Guidelines are advisory after Booker,[2] when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense, it runs afoul of the ex post facto clause. Id. at 532-533.

However, the application of harsher Sentencing Guidelines is not an issue in this case. Rather, at resentencing the court will use Sentencing Guidelines that are no higher than those in effect at the time the defendants were originally sentenced, albeit acknowledging that they are now advisory rather than mandatory. See also United States v. Fluker, 891 F.3d 541, 550-551 n. 5 (4th Cir. 2018) (noting that on resentencing after § 2255 relief is granted, "the district court could impose the same sentence by varying or departing upward. It is for the district court to select an appropriate sentence, but it can do so only after properly calculating [petitioner's] guideline range.") Accordingly, because higher sentencing guidelines will not be used at sentencing, the ex post facto concerns raised in Peugh are not present in this case.

---

[2] See United States v. Booker, 543 U.S. 220 (2005) (holding mandatory Sentencing Guidelines to be unconstitutional).

11

Nonetheless, defendants argue that, upon resentencing, the court cannot increase the sentences the defendants received on counts other than Count 11 because they were sentenced under a mandatory guidelines system and any sentence above the mandatory guidelines calculated at the time of their original sentencings would violate the ex post facto clause. The government points out that this argument is flawed because the mandatory guidelines system was found to be unconstitutional in Booker, and to require the court upon resentencing to impose a sentence within the mandatory guidelines range would reinstitute the Sixth Amendment violation identified in Booker. The court agrees with the government. On resentencing, the court is not constrained by the unconstitutional mandatory sentencing guidelines system, but rather must impose a sentence within the statutory range that is "sufficient, but not greater than necessary" to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation, as reflected in the 18 U.S.C. § 3553(a) factors.

### B. Due Process Clause

The defendants also argue that if the court were to sentence them above their original sentences on each individual count that it would raise due process concerns, citing in support North Carolina v. Pearce, 395 U.S. 711 (1969). In Pearce, the Supreme Court held that due process requires that vindictiveness against a defendant for having successfully attacked his sentence must play no part in the sentence he receives after a new trial. Id. at 725. The Court further held that to assure the absence of vindictiveness, if a court imposes a harsher sentence after a new trial, the reasons for doing so must affirmatively appear on the record. Id. Otherwise, a presumption arises that a greater sentence has been imposed for a

vindictive purpose, and the presumption must be rebutted by objective evidence that justifies the increased sentence. Alabama v. Smith, 490 U.S. 794, 798-799 (1989).

However, the Court in Smith clarified that the holding in Pearce was intended to prevent vindictiveness of a single sentencing judge and was not intended to affect the court's ability to impose a longer sentence after a new trial. Smith, 490 U.S. at 799 (citing Texas v. McCullough, 475 U.S. 134, 138 (1986)). The presumption of vindictiveness only applies in circumstances where there is a reasonable likelihood that the increase in a sentence is the product of actual vindictiveness on the part of the sentencing authority. Absent such likelihood, the defendant has the burden of proving actual vindictiveness. Smith, 490 U.S. at 799.

In United States v. Ventura, 864 F.3d 301, 310 (4th Cir. 2017), the court discussed the presumption of vindictiveness in the context of the sentence-packaging doctrine. There, following conviction on seven charges of sex-trafficking and related offenses, the defendant was sentenced to 420 months in prison. On appeal, one of the convictions was vacated along with the sentence imposed on that charge, and the case was remanded to the district court for resentencing. Id. at 304.[3] On remand, the district court reviewed sentencing memoranda and at the resentencing hearing explained that even after judgment of acquittal was entered on the § 924(c) charge, the defendant still had an advisory sentencing guideline range of 360 months to life. The district court then described the defendant's violent behavior prior to his arrest and during the time he had been incarcerated in the federal Bureau of Prisons. The

---

[3] The vacated conviction was for violation of 18 U.S.C. § 924(c) for possession of a firearm in relation to a crime of violence. The Fourth Circuit vacated the sentence after concluding that sex trafficking by force, fraud, or coercion was not categorically a crime of violence. Ventura, 864 F.3d at 307.

13

court imposed a sentence of 420 months, which reflected an increase from 360 months to 420 months on one count of sex trafficking by force, fraud, and coercion.[4] Id. at 307-308.

The defendant appealed the 420-month sentence, arguing that it was imposed vindictively after he was successful on his appeal. The Fourth Circuit denied relief because the defendant did not receive an increase in his aggregate sentence. Id. at 309. See also United States v. Kincaid, 964 F.3d 325, 328 (4th Cir. 1992) (noting that first step in determining whether a sentence violates Pearce and its progeny is determining whether the sentence is actually harsher than the one imposed prior to the successful appeal).

The Fourth Circuit reaffirmed that it follows the aggregate package approach to sentencing rather than the count-by-count approach. Under the aggregate approach, a sentence is not problematic as long as the ultimate sentence for one or more counts does not exceed that imposed for all counts at the conclusion of the first trial. Ventura, 864 F.3d at 311 (citing United States v. Gray, 852 F.3d 136, 138 (4th Cir. 1988)). Because Ventura's sentence was not increased in the aggregate, his attempt to establish a presumption of vindictiveness failed. Id.

At resentencing, the court will be mindful of the application of the § 3553(a) factors along with the constitutional issues raised by defendants. At this point, however, to the extent the defendants argue that the court cannot resentence them to at least the aggregate sentences imposed in 1998 without violating their rights under the ex post facto or due process clauses of the Constitution, their arguments fail.

---

[4] The 420-month sentence was to run concurrently with the sentences on the other five counts, which ranged in length from 60 months to 240 months. Ventura, 864 F.3d at 307-308.

## CONCLUSION

As discussed above, the defendants' motions for relief under 28 U.S.C. § 2255, ECF Nos. 654, 658, 668, 675, 676, 686, 687, 688, 689, 691, 692, 693, 694, are **GRANTED** to the extent that their convictions under Count 11, for use of a destructive device to commit a felony in violation of 18 U.S.C. § 924(c)(3)(B), and the 30-year sentences assessed on the Count 11 convictions, are **VACATED**. The defendants' motions for immediate release, ECF Nos. 738, 739, 740, are **DENIED** as the court will hold resentencing hearings. The governments' motions to dismiss, ECF Nos. 705, 706, are **DENIED**.

The parties are directed to contact the clerk of court and set separate resentencing hearings in November 2019 as to Rayed Fawzi Abed and Fahad T. Talwalbeh and to set separate resentencing hearings in December 2019 for Amar Khalid Abed and Obadya Hanafie Abed. The parties may file motions for release on bond in the interim.[5]

An appropriate order will be entered.

It is so **ORDERED**.

Entered: 09/10/19

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge

---

[5] The court makes no ruling at this time as to the eligibility of defendants for bond and reserves such decision until appropriate motions and responses have been filed.